is United States v. Brown, number 13-4442, Mr. Patton and Ms. Haywood. Good morning, your honors. My name is Tom Patton and I represent the request three minutes for rebuttal, please. That's fine. Your honors, reevaluating this court's opinion in United States v. Mahone in light of the Supreme Court's decision in DeKalb's indicates that Mahone can no longer stand as good law in this circuit. I think there are two aspects. And I guess one of the things you have to do is, how would you distinguish Blair? I would say it's dealing with a different statute. It's dealing with the robbery statute and not the terroristic threat statute. And also it is dealing with, Blair is dealing with a guilty plea, where you have an information that specifically lists the felony that the person was threatening to commit while committing the robbery. I don't think that makes a big difference under the Taylor-Shepard documents because we have an amended information here and we have instructions to the jury. Right, but in Blair you had a guilty plea colloquy in which the district court found, and then this court also found, that the defendant had admitted to committing the first-degree felony of, I believe it was aggravated assault. And here, when you have the jury instruction that only requires a finding, that the jury find that Mr. Brown threatened any crime of violence, that is a critical distinction between this case and Blair. Well, except that the jury instruction starts out by saying, in the criminal information, which is the formal legal document which charges this particular crime, lists two victims, and that would be Mr. Herbstritt and Mr. Bink. And I'm going to tell you your verdict has to be unanimous as to which particular victim or victims you must all agree. So we're not talking here about, I mean, at the outset, and of course the information itself, when after the two-wit, it describes a threat of physical harm. You're going to get over here in front of that door holding a mop handle. I'll show you when you get out of here I'm going to murder you, bitch. I'll kill you dead. You count on me, I'll murder you. I'll find you and murder you in cold blood. And he has the mop handle. There's no question here, no question, and I know I'm probably echoing Judge Jordan's opinion and Blair a little bit. We know what this case is all about, and the case wasn't about burglary or arson. It was about a threat of physical harm. Your Honor, I would submit that the problem with that analysis is that the Supreme Court explicitly and directly rejected that analysis into camps. They specifically said that a reviewing court could not look to the actual evidence presented and look at the prosecutorial theory of the case, and from that try to determine what facts the jury actually found. When the statute is indivisible, correct? When the statute is indivisible. Now there's a distinction with Judge Jordan's case. He said it doesn't matter. It does matter, I think, under de camp, and Judge Jordan's statute was a divisible statute. The question here, I've had such difficulty speaking only for myself, getting my arms around this case, and I've been doing this stuff for a long time, getting my arms around de camp. We are permitted now, because I am the sentencing judge and I have to decide whether the career offender enhancement will apply in part because of the 2004 conviction. So I'm permitted to look and see what does 2706A say, and it says this, looking at de camp now. Oh, we've got a divisible statute here. We have a 1, a 2, a 3. So you're allowed to look at the Taylor-Shepard documents to see what it is, what was the crime, and you would say, whoa, let's forget about 3 for now. Whoa, it's a 1. Sure, there's no dispute about that. No problem, and we've always been permitted to do that. Right. Now we look at a 1. Question, is it divisible or is it not divisible? Well, if it is not divisible, you can't go any further. It's overbroad, under de camp. I agree with that. Okay, and we would have to vacate and remand. If it is divisible, though, we can look at the Taylor-Shepard so people can see that this was in fact divisible. But we know that already. This is where Judge Jordan's opinion makes so much sense. We haven't developed amnesia as we reach the second step. We've already looked at this stuff, and we know it's a case of threat of physical harm, but if it's a divisible statute, it's okay. If A1 is a divisible statute. Correct. If A1 is indivisible, that's where de camp comes in. That's right, because if you look at the camps, the Supreme Court's, though, I understand the idea, and I don't think it's a, with respect to Judge Jordan, I don't think it's a case that the judge develops amnesia. No, what he said, but he also said, to shift the metaphor, the blinders are already off. We know what it is. I think that, you know, if there's this blinders exception, and that doesn't apply here, because he had to look in Blair, and so then he doesn't forget what he saw. If that exception is okay, that may be distinguished this case. But if Blair is inconsistent with desk camp, which I think you're arguing, what can we do about it? Well, don't we follow it, and then just let the court decide whether it wants to un-bonk it, and become consistent with desk camp? Well, I think, I understand your point. If I could kind of go down the order to take a couple of these things. I think you've got to distinguish Blair for the purposes of us. I agree that it's an A1 case, and you can use the modified categorical approach to figure out which subsection applies. We've done that. It's A1. No dispute. You now look, what are the elements of A1? Communicating a threat to commit a crime of violence with intent to terrorize. Those are the two elements. Now, the work of the modified categorical tool, as they call it in the camps, is done. We now know the elements. You cannot then, you know, make something else divisible. Now, there is a way, even if it's not divisible, if the statute was slightly different, it could be a crime of violence. For example, if they gave a definition section that said, for purposes of this statute, crime of violence means an offense that has the use or threatened use of physical force against the person of another. But to follow your theory of day camp, or however you pronounce it, I'm from Queens, we use the fancy way. Isn't Justice Alito right that they'd have to amend 2701 or else you can't you can't charge somebody, 2706 A1, because you can't charge someone now, if you're right, for a physical harm threat. It will always be the same problem we have. I think the problem exists. You either have to change all the state statutes to make them line up with the federal statute or the Congress can fix the statute. Right. Well, and it's, the states are under no requirements to change their laws to make the federal government happy. They just aren't. No, we agree with that, but the point is that there's two ways out. If you're going to take the strict, one could argue, academic approach, theoretical approach, that they can't took. I understand. Now, to get to the blinders are off, and then your idea of, you know, is it different than Blair? With respect to Judge Jordan, I think the term, the blinders are off, is a giveaway that you're now looking at the facts of the case, which you can't do under the categorical approach, and it's not a fact that you get amnesia. So that means you think Blair's wrong. I absolutely, I absolutely. What can I do about that? But isn't Blair distinguishable? Because he was dealing with, I'm sorry, go ahead. Yes, yes to both. Yes to both. Blair, the cert petition is pending. I'm just in the middle, I'm looking this way and that way. And I will keep quiet. There's a cert, I want to be clear, we do think Blair's wrong. My office represented Mr. Blair, cert petition's been filed, the Solicitor General declined to file a response, the Supreme Court ordered them to file a response, but that response is due July 14th. So I think Blair's wrong, but I also think it is distinguishable. And the idea about the blinders are off, we know what they did. If you look at the camps, the Supreme Court, in the majority opinion, says, fine, factually looking at what the camps admitted in his guilty plea, he committed a generic burglary. That's not the question. The question is, what were the elements of the offense he was convicted of? And because those elements did not require an unlawful entry or an unprivileged entry, they said he was not convicted of a generic burglary. So it is never a question of what they actually did. It is always a question of what was, what were they convicted of. And that is why the categorical approach focuses only on elements and not facts, because we, and to put it as bluntly as possible, they say we don't care what the underlying facts are. Well, they said that the modified factual approach that the Ninth Circuit used is no good. And once you, and the way that applies here is the same way it was the weapons hypothetical in the camps. The element here is crime of violence. Now, there are a number of different factual ways a prosecutor can try and meet that element. But what the jury gets told is, all you have to find is that there was a crime of violence. And the camps talks about the fact that since that's not, that's the element, that's all the jury is likely to get instructed they have to find. And that's overly broad for purposes of a career offender. I understand that. Exactly. And so the Supreme Court said the same thing about the weapon hypothetical. They said, fine, even if the charging document says gun, the prosecutor's theory of the case was it was a gun, the jury instructions are just going to say weapon, because that's what the element is. And if that's all the jury has to find, there has not been a finding beyond a reasonable doubt by the jury that the assault was with a gun, it doesn't qualify. And that applies perfectly to the crime of violence element in this. So back to Judge Gray's question, or all of us actually, how would you distinguish Blair? I think... I'll give you away. Excuse me? I'll give you away. Okay. I am open to your suggestion. This is a lifeline. Yes. All right. I will use my lifeline. No one tried to say Judge Jordan. What's that? Go ahead. I think you could distinguish it by saying what Judge Jordan was really finding was that the robbery statute was divisible, and therefore they could look at what individual F1 or F2 was threatened. And that would be permissible under day camp. Correct. If you find that's... And to the extent he said anything about an invisible statute, that was just dicta. It was not part of the holding. Correct. Okay. And because... Because of the fact that Abbott didn't mention Blair. Is Abbott so different from Blair that... Well, I think, number one, these things are coming down pretty... Pretty fast. Pretty fast. As an Abbott, we deal with elements. Yeah. The different drug gives you... It's a different element. Exactly. Because, number one, the Pennsylvania Supreme Court had previously said different drugs are an element. But also under Apprendi, even if the state had claimed that it wasn't an element because it affected the statutory maximum, under the Apprendi rule, as a matter of federal constitutional law, the type of drug involved is an element. And since it's an element, then it's not a problem for the decamps and the categorical approach because it becomes an element. And you see what element the government had to prove. So I really don't see Abbott as having really any impact here. I can't explain to you why they didn't talk about Blair. But I just think that they didn't have to go there because it's just... It was so clear that because of the Apprendi rule and Pennsylvania case law interpreting the statute, that the type of drug had to be an element, that they just didn't have to get to Blair because they were saying it's divisible, the type of drug is an element, so we get to look at the Taylor-Shepard documents. I take it that's what's driving this elemental approach as Apprendi. It is one of the reasons. In Taylor, they gave three reasons. They said because the statute talks about prior convictions, that means we look only to the elements of what they did. It doesn't say what did they do. It says what were they convicted of. Second was the Sixth Amendment issue. And this was in Taylor even before Apprendi. They just talk about there's a serious issue with enhancing somebody's sentence based on a fact no jury had to find. So until they overrule Almodovar-Torres, whatever that case is, the Supreme Court is going to keep taking this elemental approach. Yes, and it is the Sixth Amendment issue is a driving concern, and they talk about in the camps repeatedly that you are enhancing, if you're enhancing somebody's sentence, increasing the statutory maximum based on a fact not found by the jury that's a Sixth Amendment violation. Okay. We'll get you back in rebuttal. Thank you. Thank you. May it please the Court, Rebecca Haywood here on behalf of the United States. And I just want to note initially that right now we have a career offender case, not an ACCA case. Although there's footnotes in the camp that say that the analysis is essentially the same. That is true, but there technically would not be a Sixth Amendment. And if there's one thing about Supreme Court cases, most cases you read a footnote and you go, I don't have to worry about it. Supreme Court cases, you do have to worry about it. Because a lot of the important stuff is in the footnotes. And one of the lessons they teach you at the SG's office is you have to read the footnotes very carefully. But in this case, doesn't de camp overrule Mahone? It does not. How? It does not because Mahone specifically notes that you cannot go to a factual approach. If you look at the language in Mahone. Mahone goes to a second layer. First layer is A1, A2, A3. This is A1. And then it looks at A1 and says, okay, well, you can do the same thing and find out from the documents what aspect of A1. Because it could be arson or it could be a threat against a person. Here it was a threat against a person. The camp says, can't do a modified factual approach. Cannot. And then when it gives the example that your opponent mentioned about the weapon. If it just says weapon, you've got a problem. If it says this, this, this, and this, that's one way. If it enumerates it, fine. If it doesn't enumerate it, you take a strict theoretical approach. But you have to start where you started in the camps, which was that statute, that California burglary statute was indivisible. And here what you're starting with is a statute of Pennsylvania terrorist threats, which is clearly divisible. I'm talking about a crime of violence. Certainly. And that's where you go to Blair. Wait a second. A1, the question is not whether there's A2 and A3. The question is whether A1 is divisible. Correct. And that's where you have to read this case, read this case of Brown, consistent with this court's precedent in Blair, which is decided after the camps. And while it was a different statute, understandably it dealt with robbery and theft, that particular statute at issue in Blair was very similar to this statute of A1. Excuse me. Go ahead. Well, when they, in Blair, they charged not only, they charged a specific statute, not a description. I mean, I'm getting to the second part of Blair. Certainly. They didn't charge he hit him with a bat, he threatened him with a bat. They charged blank, this statute. Does that make a difference? It should not make a difference. And the question also is whether the camps overruled Mahone. It doesn't make a difference here because once you're looking at what was actually charged in this case, and again, one thing I want to note, too, is that while this was a trial as opposed to a guilty plea, this court in Tucker specifically said that the parameters of the evidence is defined by the information under Pennsylvania law. So you're looking at the amended information, which includes a statement, as Judge Barry read, of the very specific threats that were made. The jury did not have to find those specific threats were made, though. Correct. But the jury could not reach a verdict inconsistent with what the amended information was charged. I mean, that's where you go. We don't know what goes on in jurors' heads. And so we can only go by what the instructions were. And the instructions didn't say you have to find he threatened him in this particular way. Certainly, Your Honor. But if you look at page 873 of the record, the jury instructions do specifically reference the amended information and note that there has to be a consistent verdict with regard to the two victims of the offense. But crime of violence, isn't that a single, indivisible set of elements? No, it's not. Crime of violence is a divisible set of elements, just like Abbott as to the different types of drugs that she had. Yes, Your Honor. Really? Well, in the Fifth Circuit's decision that Mr. Patton cited, Ortiz-Gomez, the court noted although Pennsylvania itself hasn't specifically in the terroristic threat statute defined it, the court referenced, I believe it was 42 Pennsylvania Code, where is it, 9714G, which is the definition of crime of violence, which is where the court then went to say it could involve arson. So while I understand that in the camps the Supreme Court was very clear that a judge, a sentencing judge cannot reconceive an indivisible statute as a divisible one, the legislature certainly can. And it would be very unfair for the court in Ortiz-Gomez and this court in Mahoney to note that the definition of a crime of violence is reflected in that Pennsylvania statute I just referenced, which is in fact divisible. How do you deal with Justice Kagan's comment in the camp that as long as the statute itself requires only an indeterminate weapon, that is all the indictment must or is likely to allege and all the jury instructions must or are likely to mention, and most important, that is all the jury must find to convict the defendant. The jurors need not agree on whether the defendant used a gun or a knife or an iron or any other particular weapon that might appear in an imagined divisible statute because the actual statute requires the jury to find only a weapon. And even if in many cases the jury could have readily reached consensus on the weapon used, a later sentencing court cannot supply that missing judgment. Whatever the underlying facts or the evidence presented, the defendant still would not have been convicted in the deliberate and considered way the Constitution guarantees of a defense with the same or narrower elements as the supposed generic crime. I have two responses. First, the sentencing court can't do it, but the Pennsylvania legislature certainly can. What did the Pennsylvania legislature do to remedy this? It defined crime of violence in the statute that I just mentioned in a divisible way, which would include arson. Crime of violence? Crime of violence. Yes. Okay, where's that? A-1 is defined in a? Well, no, it's just the question. What I'm noting is that in Ortiz-Gomez, when we're talking about what the. . . Fifth Circuit case. Yes, the Fifth Circuit case. When we're talking about what is the definition of Pennsylvania under Pennsylvania law of the term crime of violence, the court has to give some teeth to it and notes that that phrase, crime of violence, is defined. But Ortiz-Gomez is like four years prior to the camp. Everything changed last June. Certainly. But then this court decided Blair after the camps and noted that. . . I mean, that was my second response. There we go again. Under Blair, it was a divisible statute that was being decided. Your position is that A-1 is a divisible statute? Yes. How so? How so? Because the phrase, crime of. . . Would you agree if it isn't, you lose? Well, I could lose. No, no. Right, I mean. . . And the reason. . . And that's why I want to note, one thing in my brief I do want to clarify, and I wasn't. . . I was very imprecise in talking about, was at page 39 of my brief, where I talked about what this court actually said in Mahoney pre the camps, which is that when you got to A-1, the phrase, crime of violence, invited inquiry. And frankly, it's not clear to me whether the court there was talking, Judge Smith was talking about Nwajan and the particular circumstance or not. But the example that Justice Kagan gave, weapon invited an inquiry. Yeah. And she said, ain't good enough. Right. I interrupted Judge Gambor, and I apologize. No, go right ahead. He asked a very good question before. I did? The weapon thing was good. No, when you were talking, I asked you about whether it's your position it's a divisible statute in A-1. And you said yes. And Judge Ambrose then asked, how is it divisible? And I interrupted. Sorry. Before you could answer. I interrupted. Okay. And I basically had two responses to that, which is that the phrase, crime of violence, in the government's opinion is different from weapon, because it does kind of invite inquiry, maybe not in the sense that's at issue in Nwajan and Singh, but in the immigration context. But because the phrase is not a unitary one, like weapon. It's a crime of violence that is having you look like the statute at issue in Blair, like the robbery statute, that says you look to whether it was a first or second. I can't see how crime of violence is more divisible than weapon. You've got different kinds of crimes of violence, and you've got different kinds of weapons, and I don't see the difference. Well, you know, again, the second response to that is, I still think it is different, because it asks then there is definitely going to be a separate crime of violence. It's not unitary. There are going to be different types of crimes of violence. If the Pennsylvania legislature had defined crime of violence in a way that clearly satisfied the federal statute, the federal sentencing regime, then I have no problem with that. But you were asked, how did the Pennsylvania legislature do that? How did it define crime of violence in a way that satisfied the sentencing regime? And I haven't heard the answer to that. Well, and that's where I say Ortiz Gomez, as well as Mahoney, noted that the term crime of violence, while not specifically defined in the terroristic threat statute, is defined elsewhere in the Pennsylvania code. And that is why the court looked to that to indicate and look specifically at that statute that defines a crime of violence to include arson. So does Camp let you go to the Pennsylvania code? Well, I would think Blair does. And that's the other part of this. Should we wait to see if the Supreme Court takes cert on Blair before we decide this case? Certainly that would be, that would make sense. Because I think the stronger argument is that this case, Brown, has to be decided consistent with Blair. And in Blair, this court said that, you know, said, specifically said even if the first part of the statute at issue, the robbery statute there was over broad, once you engage in the modified categorical approach, once you're dealing with a divisible statute, at the outset you're allowed to not develop the blinders and the amnesia. And that's why I say, you know, to say that the Camps overrules Mahoney, they have to be inherently inconsistent. You have to read Mahoney as it stands unless you can say that the Camps overruled it. Is crime of violence indeterminate? I don't think so because of the Pennsylvania statute that I cited that lists alternative ways and definitions of crime of violence. Some of those won't satisfy the federal scheme. That's the problem. But some of them would. And specific, they weren't, he wasn't charged with terrorizing someone with a crime of violence that was a specific crime of violence that would satisfy the requirements of the sentencing guidelines. That's the problem. He's just, he wasn't charged that way. He wasn't, the jury wasn't instructed that way. So all you have are these facts that are in the information and that's what you're hanging your hat on, those facts. And, you know, that's tough to do now.  But in Marrero, for instance, Marrero involved the question of simple assault. And I cited that case not for the proposition that it's not for the divisibility, indivisibility part of it, but it notes that one simple assault can be committed intentionally, recklessly, or knowingly. And then the question is, is that divisible or not? And once the court found it was divisible, the court then looked to facts. I mean, that is the part of this that is, well, yes, the modified categorical approach is not, shouldn't be a factual approach. The reality is when you're asking the question, like you were in Taylor, is this burglary of a boat or a dwelling, the reality is inherent in that is a question of what actually happened once you're going down that road. And I understood this could have been charged as he threatened criminal homicide. But is that a distinction that should matter? I mean, in Mahoney, the charge in reference to that. Is it a study that this was not charged as a crime of violence, physical harm? Sure. I mean, certainly. It was charged as a matter of. I mean, I was trying to say it was. Well, I mean. You don't agree with me. No, I think it was. No, I mean, what I'm saying is that it's not a material distinction in terms of it was charged as a threat to kill, which is criminal homicide, whether it's listed as, you know, it was charged as definitely physical harm against the person of another. It certainly was. That's what I thought. Right. Exactly. And that's in terms of that being a material distinction as to why this case would fall under Mahoney, I don't think that that distinction should matter here. Once you go down the road of being allowed to look at that amended information and knowing that, as this Court stated in Tucker, that the parameters of evidence in a courtroom under Pennsylvania law are subject to information, that is what matters. Are there any further questions? No further questions. Thank you. Thank you. Mr. Patton. Your Honor, the government tries to claim that the term crime of violence as used in Section 2706 is defined by the Pennsylvania legislature. It's not. You look at 2706, it has a definitional section. It's at subsection E. But the only definition it gives is the definition of the term communicates. Now, the Fifth Circuit in Ortiz-Gomez and in this court in Mahoney, in trying to struggle to figure out what could be a Pennsylvania crime of violence, referred to 42 PACSA Section 9714, which is a sentencing statute that calls for enhanced or requires mandatory minimum sentences if the person is convicted of committing a crime of violence and they have a prior conviction for a crime of violence. That section has a definitional section that says, as used in this section. So it only applies to Section 9714. And oddly enough, terroristic threats is not in that definition. So even under Pennsylvania law, the terroristic threat conviction is not a crime of violence. Now, I understand that that doesn't control whether it's a federal crime of violence. But 9714, by its own terms, only applies to that section. 2706 has a definitional section that does not give a definition of crime of violence. So you can't use 9714 to try and bootstrap in and say crime of violence is divisible because there's this definition in a completely different section. Mahone did go down the path of looking at facts, because what Mahone did when it said, all right, A1, we know A1. But we also know that A1 sometimes could involve a threatened use of physical force against the person of another, or sometimes couldn't. It then said, because crime of violence, the term crime of violence, invites inquiry, we can go forward, go further. But the invites inquiry analysis, which does look at the facts of the case, has no application when you're doing the categorical approach, even if you have to use the modified categorical approach tool. And DeCamps expressly states that. So the invites inquiry thing is gone, you're saying? Yes. If the categorical approach applies, the invites inquiry does not. And I will mispronounce this, what the Supreme Court said is, when you're interpreting the Immigration and Nationality Act and trying to decide what's an aggravated felony, some section of that definition, for example, it was A43I, said a fraud offense where the loss involves $10,000 or more. They said that statute invites inquiry because you have to look at the facts. So they said sometimes categorical applies. Look, the invites inquiry only applies in the immigration context. That's the only place they've ever used it in determining whether something is an aggravated felony. It specifically looks at the facts of the case. And in DeCamps, they say when they're talking why the Ninth Circuit case is wrong, they say we use a categorical approach here, which looks only at elements, because that's the way Congress wrote the statute. If Congress wanted us to look at the underlying facts, they would have written the statute in that way, and they use, as an example, NIOAN in the invites inquiry approach. If I could give, I think there is a way you could, a very narrow way you could rule in this case that would not have to put you in And that is if you would find that because the jury instruction, because the information does not allege the specific crime of violence he was alleged to have committed, and because the jury instruction only required a finding of any crime of violence, that you could say even if you were applying the Mahone logic or the Blair logic, the Taylor-Shepard documents do not allow you to make a finding that the jury necessarily had to find any particular crime of violence. If Mahone, just assume for the moment, if Mahone remains good law despite DeCamp, did the court conduct the analysis correctly here then? He did not. I think it's clear from the proposed findings of fact that Judge Cohill issued, he erroneously was taking the position that any violation of A1 was a violent offense, and that's the way that's written. And our position is even if Mahone applies and you could do the right analysis, because the jury instructions did not tell the jury they had to find a particular crime of violence, the unanimity instruction that the judge gave to the jury only applied, he said, the charges that he threatened two different people. You have to be unanimous on which one you find he threatened, either or or both. There was no unanimity instruction given on the crime of violence. He did not instruct them that they all had to agree beyond a reasonable doubt to the particular crime of violence threatened. But wasn't that the only thing that went to the jury? There wasn't anything else that went to the jury that I can see. Well, the only way to know that, Your Honor, would be to review the transcript. And we know we can't do that as far as the categorical, but you can't review the transcript. If you're going to the transcript. Even though we know what? Even though, here we go again. That's the problem. Even though we know. What did Justice Cardozo say? I cannot ignore as a judge what I know as a man or person. Well, and I get that. You can try Justice Stewart saying, I know it when I see it. I don't know what he was talking about. And I understand, it's a human, I understand the human nature, but the Supreme Court, if there is anything clear about the categorical approach, and arguably there isn't, it is that you have to ignore factually what happened. You just, you do. But the way the judge can take that into account, and remember this, even if he says he's not a career offender, because elementary, it's not a crime, when the judge is deciding what sentence to impose, then he can look at the prior convictions, make findings about what happened there to decide how serious that offense was to decide, am I going to give a sentence within the guideline range? All I'm talking about here is mandatory minimum. Yeah, this is just saying you couldn't be a career offender. It doesn't mean that Judge Cohill couldn't say, all right, fine, you're not a career offender because either the categorical approach or the gaps in the charging document in the guilty plea. But you know what? I find that you threatened to hurt these people, and so when I'm deciding the ultimate sentence to impose within the statutory maximum, when I'm using my discretion under the 3553A factors, I'm going to consider this. And so it doesn't mean that the judge can, it never gets considered in the sentencing decision. It just means when you're making the career offender decision or the ACID decision, you can't do it there. Thank you very much. Thank you to both counsel for very well presented arguments. I would ask if counsel would get together and have a transcript of this oral argument prepared and sent to us, and would the government mind picking that up to the constable? Thank you very much. Well done.